UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-362-GWU

BOBBY WELLS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

        Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

06-362 Wells

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

06-362 Wells

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In

such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Bobby Wells, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbosacral spine at L4-L5 and L5-S1 status post surgery, and a left hand deformity status post remote gunshot wound. (Tr. 28). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Wells retained the residual functional capacity to perform a significant number of jobs existing in the economy, and accordingly was not entitled to benefits. (Tr. 28-32). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether the plaintiff could perform any jobs if he were capable of "light" level exertion, and also had the following non-exertional impairments. (Tr. 325). He: (1) required a sit/stand option with no prolonged standing or walking in excess of one-half hour without interruption; (2) could never crawl or climb ladders or ropes; (3) could occasionally

climb ramps or stairs, bend, twist, stoop, kneel, crouch, and balance; (4) could occasionally push, pull, and use hand controls with his left upper extremity; (5) could occasionally perform gross and fine hand manipulation and occasionally reach or lift overhead with his left hand; and (6) needed to avoid concentrated exposure to full body vibration and vibratory tools, and avoid exposure to hazards such as unprotected heights and dangerous machinery. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 326-7).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Wells alleged disability due to lower back pain which limited his ability to lift, sit, or stand for long periods. (Tr. 88).[1] He underwent a laminectomy and fusion at L4-L5 and L5-S1 on February 13, 2004. (Tr. 172-3). On March 29, 2004, the plaintiff's treating neurosurgeon, Dr. John Gilbert, indicated that he had had some improvement, although he continued to diagnose a lumbar strain/sprain and muscle spasms. (Tr. 189). Dr. Gilbert noted on June 21, 2004, that post surgical x-rays were "okay," and Mr. Wells still had some time for improvement. (Tr. 187).

---

[1] Mr. Wells testified that he had been shot in the left hand at the age of 13, and could only use the thumb and "pointing" finger, but he was right-handed, and had worked successfully as an auto parts clerk for many years, although he had difficulty picking objects up. (Tr. 341-2).

However, on September 21, 2004, Dr. Gilbert wrote a note on his prescription pad stating that Mr. Wells would be "100 percent disabled" for a minimum of two years. (Tr. 188). Dr. Gilbert also submitted a "physical capacities evaluation" on December 22, 2004, restricting Mr. Wells to occasionally lifting less than ten pounds, with additional restrictions on sitting, standing, and walking no more than 15 to 20 minutes with rests, stating that he could not use his left hand for repetitive grasping, pushing, pulling, or fine manipulating, was unable to bend, squat, crawl, climb, or reach above shoulder level, had total restrictions on unprotected heights and moving machinery, and also some restriction on exposure to temperature and humidity extremes and driving automotive equipment. (Tr. 258).

The plaintiff's treating family physician, Dr. Robert Hoskins, also prepared a physical capacities evaluation limiting him to occasionally lifting up to ten pounds, sitting six hours in an eight hour day, standing and walking two hours each in an eight hour day, being able to use his left hand only for "very light" pushing and pulling and no fine manipulating, being unable to bend or crawl and occasionally squat, climb, and reach above shoulder level, having a total restriction on driving automotive equipment, and a moderate restriction on activities involving unprotected heights, moving machinery, and exposure to marked changes in temperature and humidity. (Tr. 257). Dr. Hoskins also opined that Mr. Wells would miss work two to four times a month "due to personal and medical problems." (Id.).

The ALJ rejected the opinions of the two treating sources because they were not consistent with the physicians' treatment notes. (Tr. 26). The plaintiff challenges this conclusion on appeal. However, after indicating some initial improvement after the surgery, Dr. Gilbert's notes do not contain any actual physical findings, merely complaints of pain, and the only objective testing, an x-ray of the lumbosacral spine, showed no evidence of instability. (Tr. 187, 189, 252-3, 261, 273). Thus, although Dr. Gilbert was a treating source, his office notes provided little detail to support his restrictive conclusions, and a reasonable finder of fact could have concluded that it was not entitled to controlling weight under the circumstances of this case. As the ALJ pointed out, Dr. Hoskins treated the plaintiff primarily for his hypertension, and hardly mentioned the back problem. (Tr. 184-5, 254-5, 275-6). His notes, too, provide little support for his restrictions.

The ALJ stated that he would adopt the conclusions of Dr. David Muffly, an orthopedist, who conducted a consultative examination on July 7, 2005. (Tr. 262). Mr. Wells informed this examiner that his condition seemed worse after surgery with increased lower back pain as well as numbness in his calf and burning in his foot. (Tr. 262-3). Dr. Muffly's detailed examination showed stiffness in the lower back and a slight limp on the left side, but he noted that Mr. Wells had good balance on one leg at a time. (Tr. 263). His ability to squat was poor but he could raise up on his toes and heels and remove his socks. (Tr. 263-4). Reflexes were present and

10

06-362 Wells

symmetrical and there was no weakness in the lower extremities, although sensation was decreased slightly in the left calf and foot. (Tr. 264). Dr. Muffly also noted spasms in the lumbosacral spine with forward flexion limited to 40 degrees. (Tr. 265).

Dr. Muffly completed a medical source statement indicating that the plaintiff was limited to "light" level exertion with standing and walking restricted to two hours in an eight hour day and sitting restricted to six hours in an eight hour day. (Tr. 269-70). Such a restriction on standing and walking potentially conflicts with the light level jobs of parking lot attendant, ticket taker, and non-hazardous security guard identified by the VE. (Tr. 326-7). Although the Dictionary of Occupational Titles (DOT) does not specifically provide indications of how long a job would require sitting and standing, the DOT section captioned "parking lot attendant," DOT 915.473-010, lists such duties as driving cars to parking spaces and patrolling the area to prevent thefts, while the section captioned "ticket taker," DOT 344.667-010, says that a person doing this job "may direct patrons to their seats."[2] Since the amount of standing and walking cannot with certainty be said to fall within the

---

[2] It is not readily apparent which DOT section would correspond to the "non-hazardous security" job described by the VE.

06-362 Wells

restrictions given by Dr. Muffly, who was the least restrictive source, a remand will be required for additional testimony from the VE on this point.[3]

The plaintiff has also submitted additional evidence to the Appeals Council, and while it is not a part of the Court's substantial evidence review, it may be considered along with other new evidence on remand.

For the reasons given in the Commissioner's brief at pp. 11-14, the plaintiff's arguments regarding the ALJ's alleged failure to consider his impairments in combination, and the ALJ's treatment of evidence regarding his credibility are without merit.[4]

The decision will be remanded for further consideration.

This the 13th day of June, 2007.



Signed By:

G. Wix Unthank

United States Senior Judge

---

[3] Both the jobs of ticket taker and parking lot attendant are said by the DOT to require frequent reaching and handling, and the job of parking lot attendant is also said to require frequent fingering, activities which Dr. Muffly as well as the treating sources indicated would be limited, at least with the left hand. (Tr. 257, 258, 271). Since there is a potential conflict with the DOT in these areas, the VE should explicitly address these issues.

[4] Likewise, the case of Gatliff v. Commissioner of Social Security, 172 F.3d 690 (9th Circuit 1999) is not applicable to the facts of the present case, in addition to being an authority from outside the circuit.